In the Matter of Tommie Lou Ramelow and Mary Alice Ramelow, Dependent Persons.

Gertrude Ramelow Wilson and Thomas Wilson, Petitioners-Plaintiffs in Error, v. People of Illinois, Thomas N. Teigen and Alice C. Teigen, Respondents-Defendants in Error.

Gen. No. 9,954.

Opinion filed
July 19, 1954. Rehearing denied August 23, 1954. Released for publication August 23, 1954.

PREE & PREE, of Springfield, for plaintiffs in error.

GEORGE P. COUTRAKON, State's Attorney, of Sangamon county, and DRACH & HOWARTH, all of Springfield, for defendants in error; GEORGE B. GILLESPIE, Assistant State's Attorney, and GEORGE E. DRACH, of Springfield, of counsel.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Tommie Lou Ramelow and Mary Alice Ramelow are the children of one of the petitioners, Gertrude Ramelow Wilson. On December 21, 1951, the county court of Sangamon county entered a decree adjudging these children to be "dependent children," holding the mother an improper person to have custody of the said

children for the reason that the mother was then or had been living in open adultery. By that order the county court gave custody of the children to the Children's Service League of Sangamon county and appointed the Executive Secretary of said league the legal guardian with power to consent to legal adoption of the children without notice to or consent of any person other than the guardian. The court retained jurisdiction of the cause for the purpose of making any further orders for the welfare of the children that might, from time to time, be necessary.

On April 4, 1953, Gertrude Ramelow Wilson, who had married Thomas Wilson, and Thomas Wilson, her husband, filed their petition for a modification of the decree entered on December 21, 1951. The petition set up that Gertrude Ramelow and Thomas Wilson were lawfully married; that they were conducting themselves properly; that they were fit persons to have the custody of the children; that Wilson was gainfully employed and maintained a proper home for the rearing of the children; that the petitioners were morally and otherwise proper and fit persons to have custody of the children; that there had been such a change in the status of the petitioners to justify the modification of the order and asked that custody of the children be returned to the petitioners. On April 4, 1953, the petitioners filed a petition for a change of venue from the presiding judge on the ground of prejudice. This motion was denied on October 1, 1953 but the presiding judge on his own motion, called in another judge to hear the petition for modification. On November 20, 1953, Thomas N. Teigen and Alice C. Teigen, husband and wife, filed a petition to intervene on the ground that they had on April 27, 1953, filed a petition for adoption of the children and that the children had resided in their home since November 19, 1952; that the guardian had consented to the adoption of the

193

children by the said intervenors. A motion to strike the petition for leave to intervene was filed by the petitioners, Gertrude Ramelow Wilson and Thomas Wilson. On December 3, 1953, the State's Attorney of Sangamon county filed a motion to strike and dismiss the petition to modify the decree and on December 4, 1953, the petitioners filed a demand for jury. On December 5, the motion to strike and dismiss the petition to modify the decree was granted and the motion for a jury trial was denied. From these orders the petitioners come to this court by way of writ of error.

The order of the county court of December 21, 1951, is authorized by section 201 of chapter 23, Illinois Revised Statutes [Jones Ill. Stats. Ann. 19.092]. The petitioners do not question that order.

■ The authority of the county court to enter the original order of December 21, 1951, being conceded, the question of the effect of such order must be considered. If, as the defendants in error contend, it was a final order and clearly divested the mother of all right to the custody of her children, then the petition for modification was properly dismissed. On the other hand, if the order was a continuing order, subject to change, modification or even vacation, as the circumstances later might require, the petition to modify was proper. By the terms of the order, the county court retained jurisdiction of the cause, for the purpose of making further orders for the welfare of the children as might, from time to time, be proper. It has been said that the right of parents to the society and custody of their children is inherent, and that while the Juvenile Court Act should receive a liberal construction in furtherance of the legitimate object thereof, it should not be held to extend to cases where there is no substantial ground for interference to protect the child. *Lindsay v. Lindsay,* 257 Ill. 328. The statute clearly sets forth the intention of the Act. Section 202

194

of chapter 23, Illinois Revised Statute [Jones Ill. Stats. Ann. 19.093] says: "Whenever it shall appear to the court before or after the appointment of a guardian under this act that the home of the child or of his parents, former guardian or custodian is a suitable place for such child and that such child could be permitted to remain or ordered to be returned to said home consistent with the public good and the good of such child, the court may enter an order to that effect returning such child to his home under probation, parole or otherwise; it being the intention of this act that no child shall be taken away or kept out of his home or away from his parents and guardian any longer than is reasonably necessary to preserve the welfare of such child and the interest of this State: Provided, however, That no such order shall be entered without first giving ten days' notice to the guardian, institution or association to whose care such child has been committed, unless such guardian, institution or association consents to such order."

To further set forth the intention and purpose of this Act, this language is used in section 201 of chapter 23, Illinois Revised Statute [Jones Ill. Stats. Ann. 19.092]: "Any child found to be dependent, neglected or delinquent as defined in this act, and awarded by the court to a guardian, institution or association, shall be held by such guardian, institution or association, as the case may be, by virtue of the order entered of record in such case, and the clerk of the court shall issue and cause to be delivered to such guardian, institution or association a certified copy of such order of the court, which certified copy of such order shall be proof of the authority of such guardian, institution or association in behalf of such child, and no other process need issue to warrant the keeping of such child. The guardianship under this act shall continue until the court shall by further order otherwise direct but

not after such child shall have reached the age of twenty-one (21) years. Such child or any person interested in such child may from time to time upon a proper showing apply to the court for the appointment of a new guardian or the restoration of such child to the custody of its parents or for the discharge of the guardian so appointed."

█ Thus, it would appear from the terms of the order and the clearly stated intent of the Act that the order taking the children away from their mother was a continuing order subject to modification. The defendants in error cite the case of *People v. Cole,* 322 Ill. 95 in support of their contention that the order of dependency was final. This court can find nothing in that case as authority to that effect. That case was an adoption case and does not touch the questions in this case.

█ If the children had been legally adopted, then there can be no question that the rights of the parents were ended. But it will be noted in this case that the petition for modification was filed on April 4, 1953, and the petition to adopt was filed on April 27, 1953. The date of consent to adopt by the guardian is not shown, but both the petition to adopt and the consent to adopt were filed after the filing of the petition to modify. Thus, it is readily apparent that no adoption proceeding had been consummated and the divestment of the rights of the mother was not complete. The defendants in error cite the case of *People v. Day,* 321 Ill. 552. That case is authority for the ascertaining of the intention of the legislature by comparison with similar statutes. Any similarity to the Adoption Act would be only as to the matter of interest of the children. In this matter the intent is so clearly expressed in the Act itself, no comparison is necessary.

█ The petition to modify the original decree was dismissed as insufficient on its face. The points of insufficiency are not set forth in the order of dismissal.

196

The petition recited that the petitioners were married; that they were conducting themselves properly; that they were financially able to care for the children; that they had rehabilitated themselves morally so as to provide a proper environment for the children and there had been such a substantial change in the status of the petitioners to justify the return of the children to them. We think the petition was sufficient on its face.

■ ■ The defendants in error say that the order was *res adjudicata* as to the rights of the petitioners. The order was *res adjudicata* at the time it was entered as to the matters it adjudicated then. However, it was not *res adjudicata* as to any matters showing a change in conditions or the status of the parties. This point is well decided in the case of *Nye v. Nye,* 411 Ill. 408, where the court said: "After a divorce decree in this State the custody of the children is always subject to the order of the court which enters the decree and may be changed from time to time as the best interests of the children demand. The decree is *res judicata* as to the facts which existed at the time it was entered but not as to facts arising thereafter. (*People ex rel. Stockham v. Schaedel,* 340 Ill. 560.) In proceedings involving child custody the order of the court or judge having competent jurisdiction is a final order, and is binding upon the parties under the same facts and so long as the same conditions exist as did at the time of the hearing and order. (*Cormack v. Marshall,* 211 Ill. 519.) . . ."

■ ■ If the petition to modify was sufficient for a hearing on the facts alleged, then the order denying a jury trial was error. The right of a trial by jury in this kind of cause was preserved and provided for, upon application by any person interested therein, by Section 2 of the Act [Ill. Rev. Stats. 1953, ch. 23, § 191; Jones Ill. Stats. Ann. 19.082]. If right of a jury trial is given in the matter of the institution of pro-

ceedings to determine a child "dependent" or "delinquent" then trial of the facts presented by a petition to modify a decree, must, on demand, be by a jury. As was said in the case *In re Tilton*, 286 Ill. App. 388, at page 390: "It was as necessary to determine the fitness of plaintiffs in error in this proceeding, as proper persons to have the care and custody of the child, as it was to determine their fitness under the original petition filed. This resolved itself into a question of fact. We are of the opinion that it is contemplated by section 2 of the act that such questions of fact, upon the motion of any person interested or upon the court's own motion, shall be tried by a jury of six." This court does not pass on the truth of the allegations set out in the petition to modify. Those are questions of fact to be determined.

The courts of this State and the legislature by its expressed language have recognized, many, many times, that the rights of the parents are paramount and that the State can only step in and take charge of children where the parents by their own misconduct have forfeited their rights to the children or through inability either financial or otherwise are unable to properly care for the children. The primary interest in all these cases is the welfare of the child. We must therefore hold that the mother in this case and her husband must be allowed to have their day in court to show that they are now the proper kind of parents to have the custody of these children. They must be allowed to show that they have changed their conduct and that they can and will provide the necessary moral and financial environment for the rearing of the children. The original order was *res judicata,* as to the rights of the mother at the time it was entered but it was a continuing order subject to modification upon reformation or change of conditions. If, while the conditions were the same, a legal adoption had been

198

had, then the parents would have no further right, but in this case there was no legal adoption and only a petition to adopt after the petition for modification had been filed. We must therefore hold that the order of the county court of Sangamon county denying the right of trial by jury and dismissing the petition on the ground of insufficiency, was error; to hold otherwise would be to close the door in the face of all parents who through their own misconduct have forfeited their right to their children or through inability, financially or otherwise, have had the children taken from them; to hold otherwise would be to destroy any incentive to reform on the part of a parent who has been guilty of misdoing, and to hold otherwise would be contrary to the expressed intention of the legislature as stated in the Act (*supra*) where it says: "It being the intention of this act that no child shall be taken away or kept out of his home or away from his parents and guardian any longer than is reasonably necessary to preserve the welfare of such child and the interest of this State."

It is therefore our judgment that the cause be reversed and remanded with directions to re-instate the petition and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded with directions.*